KAREN P. HEWITT
United States Attorney
CAROLINE P. HAN
Assistant U.S. Attorney
California State Bar No. 250301
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Phone: (619) 557-5220
Fax: (619) 235-2757
E-mail: caroline.han@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>TROY JOHN RITTENHOUSE,<br><br>　　　　Defendant. | Criminal Case No. 08CR1919-IEG<br><br>**RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS:**<br><br>**(1) TO COMPEL SPECIFIC DISCOVERY**<br>**(2) TO SUPPRESS STATEMENTS**<br>**(3) FOR LEAVE TO FILE FURTHER MOTIONS**<br><br>Date:　August 4, 2008<br>Time:　2:00 p.m.<br>Court:　The Hon. Irma E. Gonzalez |

　　　　COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, United States Attorney, Karen P. Hewitt, and Assistant U.S. Attorney Caroline P. Han, and hereby files its Response and Opposition to Defendant's Motions to Compel Specific Discovery, Suppress Defendant's Statements, and For Leave to File Further Motions. This Response and Opposition is based upon the files and records of this case, together with the attached Statement of Facts, Memorandum of Points and Authorities.

//

//

//

Criminal Case No. 08CR1919-IEG

**I**

**STATEMENT OF FACTS**

On May 22, 2008 at approximately 12:40 am, the defendant attempted to enter the United States at the San Ysidro Port of Entry as the driver and sole visible occupant of a 2005 blue Chevrolet Silverado bearing California license plate 7B23171. Defendant presented a United States passport bearing the name of Jerome Robert Domane to the Customs and Border Protection (CBP) primary inspection officer. In addition, the officer observed that the defendant stated that he was not bringing anything from Mexico. The officer asked the defendant to turn the vehicle off, and for the defendant to give the keys to the vehicle to the officer. Thereafter, the officer observed that none of the keys matched the vehicle. The officer also observed humans concealed under a cloth in the extended cab of the vehicle. Thereafter, the defendant and the vehicle were referred for secondary inspection.

In the secondary inspection area, CBP officers removed six people from the extended cab of the vehicle. They were all interviewed, and it was determined that they were Mexican citizens with no legal right to enter or remain in the United States. Among the group were Martin Vaca-Soto, Araceli Julian-Estrada, and Josefina Perez-Garcia who were all chosen as material witnesses. The defendant was placed under arrest and taken into custody. The defendant was then fingerprinted, and his true identity of Troy John Rittenhouse was revealed.

The defendant was advised of his <u>Miranda</u> rights and invoked his right to remain silent at approximately 3:45 am.

The material witnesses were also interviewed, and they all stated that they were Mexican citizens with no legal right to enter or remain in the United States. Martin Vaca-Soto stated that he was paying $3000 to be smuggled into the United States, and Araceli Julian-Estrada and Josefina Perez-Garcia stated that their smuggling fee was undetermined.

//
//
//

**II**

**MOTION TO COMPEL SPECIFIC DISCOVERY AND PRESERVE EVIDENCE**

To date, the Government has provided the defendant with 114 pages of discovery including the complaint and statement of facts, report of investigation, photographs of the vehicle, and a DVD which contains the advisal of Miranda rights to the defendant and the material witness' statements.

With respect to the defendant's discovery motions, the Constitution requires the Government to preserve evidence "that might be expected to play a significant role in the suspect's defense." California v. Trombetta, 467 U.S. 479, 488 (1984). To require preservation by the Government, such evidence must (1) "possess an exculpatory value that was apparent before the evidence was destroyed," and (2) "be of such a nature that the Defendant would be unable to obtain comparable evidence by other reasonably available means." Id. at 489; see also Cooper v. Calderon, 255 F.3d 1104, 1113-14 (9th Cir. 2001). The Government will make every effort to preserve evidence it deems to be relevant and material to this case. Any failure to gather and preserve evidence, however, would not violate due process absent bad faith by the Government that results in actual prejudice to the Defendant. See Illinois v. Fisher, 540 U.S. 544 (2004) (per curiam); Arizona v. Youngblood, 488 U.S. 51, 57-58 (1988); United States v. Rivera-Relle, 322 F.3d 670 (9th Cir. 2003); Downs v. Hoyt, 232 F.3d 1031, 1037-38 (9th Cir. 2000).

**(1) Defendant's Statements** – The Government recognizes its obligation, under Rules 16(a)(1)(A) and 16(a)(1)(B), to provide to the defendant the substance of the defendant's oral statements and defendant's written statements. (Unless otherwise noted, all references to "Rules" refers to the Federal Rules of Criminal Procedure.) The Government has produced all of the defendant's statements that are known to the undersigned Assistant U.S. Attorney at this date. If the Government discovers additional oral or written statements that require disclosure under Rule 16(a)(1)(A) or Rule 16(a)(1)(B), such statements will be promptly provided to Defendant.

**(2) Defendant's Prior Record** – The Government has provided the defendant with a copy of his known prior criminal record and, consequently, has fulfilled its duty of discovery under Rule 16(a)(1)(D). See United States v. Audelo-Sanchez, 923 F.2d 129 (9th Cir. 1990). To the extent that the Government determines that there are any additional documents reflecting the defendant's prior criminal record, the Government will provide those to the defendant. In addition, the Government will disclose in advance of trial the general nature of any "other bad acts" evidence that the United States intends to introduce at trial pursuant to Fed. R. Evid. 404(b). Evidence should not be treated as "other bad acts" evidence under Fed. R. Evid. 404(b) when the evidence concerning the other bad acts and the evidence concerning the crime charged are "inextricably intertwined." See United States v. Soliman, 812 F.2d 277, 279 (9th Cir. 1987).

**(3) Tangible Objects** – The Government has complied and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy tangible objects that are within its possession, custody, or control, and that is either material to the preparation of the defendant's defenses, or is intended for use by the Government as evidence during its case-in-chief at trial, or was obtained from or belongs to the defendant. The Government need not, however, produce rebuttal evidence in advance of trial. United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984). The defendant has further requested color copies of all photographs related to the case. Should the defense wish to see color copies, the Government will gladly set up a time for the defense to review the Government's color photographs. In addition, the Government will provide the defendant with color copies it intends to use at trial before trial.

**(4) Arrest Reports, Notes, and Dispatch Tapes** – The Government has provided the defendant with all known reports related to the defendant's arrest in this case. The Government is not aware of the existence of any dispatch tapes relevant to this case. The Government will continue to comply with its obligation to provide to the defendant all reports subject to Rule 16.

The Government has no objection to the preservation of the agents' handwritten notes. See United States v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents must preserve their

1  original notes of interviews of an accused or prospective government witnesses). However, the
2  Government objects to providing the defendant with a copy of the rough notes at this time. The
3  Government is not required to produce the notes pursuant to the Jencks Act because the notes
4  do not constitute "statements" (as defined 18 U.S.C. § 3500(e)) unless the notes (1) comprise
5  both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or
6  adopted by the witness. United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980). The
7  notes are not Brady material because, as discussed further, the notes do not present any
8  material exculpatory information or any evidence favorable to the defendant that is material to
9  guilt or punishment. If, during a future evidentiary hearing, certain rough notes become
10 particularly relevant, the notes in question will be made available to the defendant.

11 **(5)  Evidence Seized** – The Government has complied and will continue to comply
12 with Rule 16(a)(1)(E) in allowing the defendant an opportunity, upon reasonable notice, to
13 examine, inspect, and copy all evidence seized that is within its possession, custody, or control,
14 and that is either material to the preparation of the defendant's defense, or is intended for use
15 by the Government as evidence during its case-in-chief at trial, or was obtained from or
16 belongs to the defendant.

17 **(6)  Brady Material** – The Government has and will continue to perform its duty
18 under Brady v. Maryland, 373 U.S. 83 (1963) to disclose material exculpatory information or
19 evidence favorable to the defendant when such evidence is material to guilt or punishment.
20 The Government recognizes that its obligation under Brady covers not only exculpatory
21 evidence, but also evidence that could be used to impeach witnesses who testify on behalf of
22 the United States. See Giglio v. United States, 405 U.S. 150, 154 (1972); United States v.
23 Bagley, 473 U.S. 667, 676-77 (1985). This obligation also extends to evidence that was not
24 requested by the defense. Bagley, 473 U.S. at 682; United States v. Agurs, 427 U.S. 97,
25 107-10 (1976). "Evidence is material, and must be disclosed (pursuant to Brady), 'if there is a
26 reasonable probability that, had the evidence been disclosed to the defense, the result of the
27 proceeding would have been different.'" Carriger v. Stewart, 132 F.3d 463, 479 (9th Cir. 1997)
28

(en banc). The final determination of materiality is based on the "suppressed evidence considered collectively, not item by item." Kyles v. Whitley, 514 U.S. 419, 436-37 (1995).

Brady does not, however, mandate that the Government open all of its files for discovery. See United States v. Henke, 222 F.3d 633, 642-44 (9th Cir. 2000) (per curiam). Under Brady, the United States is not required to provide: (1) neutral, irrelevant, speculative, or inculpatory evidence (see United States v. Smith, 282 F.3d 758, 770 (9th Cir. 2002)); (2) evidence available to the defendant from other sources (see United States v. Bracy, 67 F.3d 1421, 1428-29 (9th Cir. 1995)); (3) evidence that the defendant already possesses (see United States v. Mikaelian, 168 F.3d 380-389-90 (9th Cir. 1999) amended by 180 F.3d 1091 (9th Cir. 1999)); or (4) evidence that the undersigned Assistant U.S. Attorney could not reasonably be imputed to have knowledge or control over. See United States v. Hanson, 262 F.3d 1217, 1234-35 (11th Cir. 2001). Brady does not require the United States "to create exculpatory evidence that does not exist," United States v. Sukumolahan, 610 F.2d 685, 687 (9th Cir. 1980), but only requires that the Government "supply the defendant with exculpatory information of which it is aware." United States v. Flores, 540 F.2d 432, 438 (9th Cir. 1976).

**(7) Impeachment Evidence** – As previously discussed, the Government recognizes its obligation under Brady and Giglio to provide material evidence that could be used to impeach Government witnesses.

**(8) Bias by Informants or Cooperating Witnesses** – As discussed above, the Government is unaware of any informants or cooperating witnesses in this case.

**(9) Evidence of Bias or Motive to Lie** – The Government recognizes its obligation under Brady and Giglio to provide evidence that could be used to impeach Government witnesses including material information regarding demonstrable bias or motive to lie.

**(10) Evidence of Criminal Investigation of Any Government Witness** – As noted above, the Government objects to providing any evidence that a prospective witness is under criminal investigation, but will provide the conviction record, if any, which could be used to impeach all witnesses the Government intends to call in its case-in-chief.

  **(11) Henthorn Material** – The Government will comply with United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) and request that all federal agencies involved in the criminal investigation and prosecution review the personnel files of the federal law enforcement inspectors, officers, and special agents whom the Government intends to call at trial and disclose information favorable to the defense that meets the appropriate standard of materiality. United States v. Booth, 309 F.3d 566, 574 (9th Cir. 2002) (citing United States v. Jennings, 960 F.2d 1488, 1489 (9th Cir. 1992). If the undersigned Assistant U.S. Attorney is uncertain whether certain incriminating information in the personnel files is "material," the information will be submitted to the Court for an in camera inspection and review.

  **(12) Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling** – The Government recognizes its obligation under Brady and Giglio to provide material evidence that could be used to impeach Government witnesses including material information related to perception, recollection, ability to communicate, or truth telling. The Government strenuously objects to providing any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic because such information is not discoverable under Rule 16, Brady, Giglio, Henthorn, or any other Constitutional or statutory disclosure provision.

  **(13) Witness Addresses** – The Government has already provided the defendant with the reports containing the names, work addresses, and telephone numbers of the special agents involved in this case. In its trial memorandum, the Government will provide the defendant with a list of all witnesses whom it intends to call in its case-in-chief, although delivery of such a witness list is not required. See United States v. Discher, 960 F.2d 870 (9th Cir. 1992); United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987). The Government strenuously objects to providing the home addresses to the defendant. In non-capital cases, the Government is not even required to disclose the names of its witnesses prior to trial. United States v. Dishner, 974 F.2d 1502, 1522 (9th Cir 1992); (citing United States v. Steel, 759 F.2d 706, 709 (9th Cir. 1985)); United States v. Hicks, 103 F.23d 837, 841 (9th Cir. 1996); see also United States v. Bejasa, 904 F.2d 137 (2d Cir. 1990) (holding that United States did not improperly deny the

1 defendants access to government witnesses whose telephone numbers and addresses the
2 government refused to provide because the defendant knew the identities of the government
3 witnesses and presumably knew their telephone numbers or could have contacted them through
4 the exercise of due diligence).

5     **(14) Name of Witnesses Favorable to the Defendant** – The Government is not aware
6 of the names of any witnesses favorable to the defendant's case. If the Government discovers
7 any witnesses favorable to the defendant, the names of such witnesses will be promptly
8 provided.

9     **(15) Witness Statements** – The Government is aware of its obligation to provide
10 witness statements to the defendant where relevant, and will do so at the appropriate time.

11     **(16) Statements of Individuals Who Will Not be a Witness**– The Government objects
12 to the defendant's requests for all statements made by individuals who may have information
13 relevant to the case who the government does not intend to call as a witness. The Government
14 is not responsible for all possible information and evidence regarding any speculative defense
15 claimed by the defendant. Wood v. Bartholomew, 516 U.S. 1, 6-8 (1995) (per curiam) (holding
16 that inadmissible materials that are not likely to lead to the discovery of admissible exculpatory
17 evidence are not subject to disclosure under Brady).

18     **(17) Information That May Result in a Lower Sentence Under the Guidelines** –
19 The Government has provided and will continue to provide the defendant with all Brady
20 material that may result in mitigation of the defendant's sentence. Nevertheless, the
21 Government is not required to provide information bearing on the defendant' sentences until
22 after the defendant' convictions or guilty pleas and prior to their sentencing dates. See United
23 States v. Juvenile Male, 864 F.2d 641, 647 (9th Cir. 1988) (no Brady violation occurs "if the
24 evidence is disclosed to the the defendant at a time when the disclosure remains in value").

25     **(18) Jencks Act Material** – Rule 26.2 incorporates the Jencks Act, 18 U.S.C. §3500,
26 into the Federal Rules of Criminal Procedure. The Jencks Act requires that, after a
27 Government witness has testified on direct examination, the Government must give the
28 defendant any "statement" (as defined by the Jencks Act) in the Government's possession that

1  was made by the witness relating to the subject matter to which the witness testified. 18 U.S.C.
2  §3500(b).  For purposes of the Jencks Act, a "statement" is (1) a written statement made by the
3  witness and signed or otherwise adopted or approved by her, (2) a substantially verbatim,
4  contemporaneously recorded transcription of the witness's oral statement, or (3) a statement by
5  the witness before a grand jury. 18 U.S.C. §3500(e).  If notes are read back to a witness to see
6  whether or not the government agent correctly understood what the witness was saying, that act
7  constitutes "adoption by the witness" for purposes of the Jencks Act. United States v. Boshell,
8  952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)).

   **(19)  Residual Request** – The Government has already complied with the defendant's
   residual request for prompt compliance with the defendant's discovery requests.

## III

## DEFENDANT'S MOTION TO SUPPRESS STATEMENTS

Defendant moves this Court for an order suppressing any statements because they were allegedly made as a result of an invalid waiver of his rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966).  The United States is only aware of the defendant's statements that he made during primary inspection.  As stated above, after the defendant was taken into custody, he was advised of his Miranda rights and he invoked his right to remain silent.  Based on those facts, as explained further below, the United States believes that the Court should deny the defendant's motion because the statements during primary inspection were made voluntarily and a time when the defendant was not in custody.  Moreover, the defendant has not set forth any factual basis that contradicts these facts.  Because the defendant was not subject to custodial interrogation, the statements are therefore admissible.

**1. Deny Motion Because Defendant Failed To Comply With The Local Rules**

This Court can and should deny Defendant's motion without a suppression hearing. Under Ninth Circuit and Southern District precedent, as well as Southern District Local Criminal Rule 47.1(g)(1)-(4), a defendant is entitled to an evidentiary hearing on a motion to suppress only when the defendant adduces specific facts sufficient to require the granting of the defendant's motion. See United States v. Batiste, 868 F.2d 1089, 1093 (9th Cir. 1989) ("[T]he

defendant, in his motion to suppress, failed to dispute any material fact in the government's proffer. In these circumstances, the district court was not required to hold an evidentiary hearing."); United States v. Wardlow, 951 F.2d 1115 (9th Cir. 1991) (defendant forfeited right to evidentiary hearing on motion to suppress by not properly submitting declaration pursuant to similar local rule in Central District of California); United States v. Moran- Garcia, 783 F. Supp. 1266, 1274 (S.D. Cal. 1991) (stating that boilerplate motion containing indefinite and unsworn allegations was insufficient to require evidentiary hearing on defendant's motion to suppress statements); Crim. L.R. 47.1g(1) (stating that "[c]riminal motions requiring predicate factual finding shall be supported by declaration(s). . . . The Court need not grant an evidentiary hearing where either party fails to properly support its motion for opposition.").

Here, Defendant has not made any allegations that contradict the above statement of facts. In addition, he has failed to support his motion with a declaration, in clear violation of Criminal Local Rule 47.1(g). As such, no allegations exist that establish a Miranda violation, clearly making it unnecessary to hold an evidentiary hearing in this case. Cf. United States v. Howell, 231 F.3d 616, 620 (9th Cir. 2000) ("An evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist." (citation omitted). Defendant's motion to suppress statements should be denied.

**2. Defendant Was Not In Custody When He Made Primary Inspection Statements**

When a person has been deprived of his or her freedom of action in a significant way, Government agents must administer Miranda warnings prior to questioning the person. Miranda v. Arizona, 384 U.S. 436 (1966). Such a requirement thus has two components: (1) custody, and (2) interrogation. Id. at 477-78. Whether a person is in custody is measured by an objective standard. Berkemer v. McCarty, 468 U.S. 420, 442 (1984). A court must examine the totality of circumstances and determine "whether a reasonable innocent person in such circumstances would conclude that after brief questioning he or she would not be free to leave." United States v. Booth, 669 F.3d 1231, 1235 (9th Cir. 1981); see also United States v. Beraun-Perez, 812 F.2d 578, 580 (9th Cir. 1980). Factors relevant to this determination are "1)

the language used to summon the individual; 2) the extent to which the defendant is confronted with evidence of guilt; 3) the physical surroundings of the interrogation; 4) the duration of the detention; and 5) the degree of pressure applied to detain the individual." Id. (citation omitted).

The Supreme Court held that in the "general interest of effective crime prevention and detection...a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." Terry v. Ohio, 392 U.S. 1, 22 (1968). This authorized investigatory detention or stop falls short of custody when a Border Patrol agent does not have enough information to execute an arrest, and must investigate further through brief, routine questioning about citizenship and immigration status. See United States v. Brignoni-Ponce, 422 U.S. 873, 878-88 (1975); United States v. Galindo-Gallegos, 244 F.3d 728, 731-32 (9th Cir.), modified by 255 F.3d 1154 (9th Cir. 2001).

The case of Florida v. Royer, 460 U.S. 491 (1983), is instructive. In Royer, two police detectives at the Miami International Airport were observing Royer and thought he fit a "drug courier profile." As Royer walked over to the airline boarding area, the two detectives approached him, identified themselves as police officers, and asked if Royer had a "moment" to speak with time. Royer said, "Yes." Id. at 493-494. Upon request, Royer produced his airline ticket and his driver's license. When asked why the ticket was in the name of "Holt," instead of the name "Royer," as on his license, Royer said a friend had made the reservation in the other name. Royer was noticeably more nervous during this conversation, whereupon the detectives told him they were narcotics investigators and that they suspected him of transporting narcotics. Id. at 494. The detectives then asked Royer to accompany them to a room 40 feet away, but kept his ticket and identification. Royer said nothing, but went with them. Id.

In deciding the case, the Supreme Court noted:

[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his

1       voluntary answers to such questions. (Citations omitted). Nor would the fact that

2       the officer identifies himself as a police officer, without more, convert the

3       encounter into a seizure requiring some level of objective justification. United

4       States v. Mendenhall, 446 U.S. 544, 555, 100 S. Ct. 1870, 1877, 64 L. Ed.2d 497

5       (1980) (opinion of Stewart, J.). The person approached, however, need not answer

6       any question put to him; indeed, he may decline to listen to the questions at all and

7       may go on his way. (Citation omitted).

Id. at 497-98 (citations omitted).

Finally, the Ninth Circuit decided this issue in <u>Benitez-Mendez</u> v. <u>Immigration and Naturalization Service</u>, 752 F.2d 1309, 1310 (9th Cir. 1984), in which a Border Patrol officer approached and questioned a worker in a field after a number of other workers had fled upon seeing the Border Patrol. The Ninth Circuit found that no seizure had taken place in regard to the initial questioning of the individual by the Border Patrol. The Court stated that "[f]rom the record, it does not appear that the Border Patrol officer's initial encounter with petitioner amounted to a seizure under the Anderson test. The officer approached the petitioner in an open field and asked him several questions to which he responded voluntarily. There is no evidence of the use of physical force, a display of a weapon, or the threatening presence of several officers." Id. at 1311.

Detaining a person for routine border questioning is not custodial. <u>United States</u> v. <u>Troise</u>, 796 F.2d 310, 314 (9th Cir. 1986); see also <u>United States</u> v. <u>Galindo-Gallegos</u>, 244 F.3d 728, 731 (9th Cir.), modified by 255 F.3d 1154 (9th Cir. 2001) (Ninth Circuit upheld Judge Gonzalez's denial of a defendant's motion to suppress his field statements). In <u>Galindo-Gallegos</u>, Border Patrol agents apprehended the defendant and others running near the Mexican border. Once they had the 15 or 20 people seated, an agent asked them what country they were from and whether they had a legal right to be in the United States. Id. The defendant said that he was from Mexico and had no such right. Id. The Border Patrol agents did not advise the group of their Miranda rights prior to this questioning. Id. After the defendant admitted that he

1 was an alien illegally in the United States, he and the others were handcuffed and put into one
2 of the vehicles. Id. The Ninth Circuit affirmed the district court's decision not to suppress the
3 defendant's field statements. Id.
4    This case is analogous to Royer, Benitez-Mendez, and Galindo-Gallegos. Here, a CBP
5 officer stopped the defendant at the primary inspection area of the San Ysidro Port of Entry to
6 make a basic and routine inquiry prior to the defendant's admittance into the United States.
7 Any statements he made were made during a brief investigatory stop. See, e.g., United States v.
8 Brignoni-Ponce, 422 U.S. 873, 878-89 (1975) (noting that it is well established that law
9 enforcement may make a brief investigatory stop and ask questions about citizenship and
10 immigration status); United States v. Woods, 720 F.2d 1022, 1029 (9th Cir. 1983) (holding that
11 persons subjected to brief investigatory detentions are not entitled to Miranda warnings).
12 Defendant answered the officer's questions voluntarily. The record is devoid of any suggestion
13 that the officer physically restrained Defendant or restricted his liberty in any meaningful way.
14 Further, the fact that officers were armed or displayed badges does not turn a consensual
15 encounter into a custodial situation. See United States v. Drayton, 536 U.S. 194, 204-205
16 (2002). During this questioning, Defendant was not placed in handcuffs or searched. There is
17 simply nothing to suggest that Defendant was in custody during primary inspection and his
18 statements are admissible at trial. For all of the foregoing reasons, the Court should deny
19 Defendant's motion to suppress all statements.
20 //
21 //
22 //
23 //
24 //
25 //
26 //
27 //
28 //

## IV

## **CONCLUSION**

For the foregoing reasons, the Government requests that the Court deny the defendant's motions, except where unopposed.

DATED: July 28, 2008

                Respectfully submitted,

                KAREN P. HEWITT
                United States Attorney

                /s/ *Caroline P. Han*
                CAROLINE P. HAN
                Assistant United States Attorney
                Attorneys for Plaintiff
                United States of America

|   |   |   |
|---|---|---|
| 1 | UNITED STATES DISTRICT COURT | |
| 2 | SOUTHERN DISTRICT OF CALIFORNIA | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08CR1919-IEG |
| | ) | |
| Plaintiff, | ) | |
| | ) | CERTIFICATE OF SERVICE |
| v. | ) | |
| | ) | |
| TROY JOHN RITTENHOUSE, | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

IT IS HEREBY CERTIFIED THAT:

I, Caroline P. Han, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **RESPONSE AND OPPOSITION TO THE DEFENDANT'S MOTIONS FOR DISCOVERY** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them:

Antonio Yoon
*Attorney for the defendant*

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 28, 2008.

/s/ *Caroline P. Han*
_____
CAROLINE P. HAN